**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**DESIGN PRECAST & PIPE, INC.**                                                    **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 1:22-cv-148-TBM-RPM**

**BROWN INDUSTRIAL CONSTRUCTION,
LLC *and* UNITED STATES FIRE
INSURANCE COMPANY**                                                    **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This is a contract dispute between Brown Industrial Construction, LLC, and its subcontractor Design Precast & Pipe, Inc., arising out of the I-10 New Orleans East Drain Canal Bridge Project. Design alleges Brown did not pay in full for concrete median barriers that Design supplied for the project. Design also alleges that United States Fire Insurance Company failed to honor claims on a payment bond issued for the project awarded to Brown.[1]

Brown and US Fire jointly request this Court dismiss the suit because the Court lacks personal jurisdiction and venue is improper. In the alternative, Brown and US Fire request the Court transfer this matter to the United States District Court for the Eastern District of Louisiana because the parties entered into a valid forum-selection clause. The Court finds Brown and US Fire's Motion [7] to Dismiss or, in the alternative, to Transfer should be denied in part and granted in part, and this civil action should be transferred because the interest of justice is served by holding parties to their bargain. Therefore, this case should be transferred pursuant to the forum-selection clause to the United States District Court for the Eastern District of Louisiana.

---

[1] US Fire issued a payment bond that guaranteed payment of the public contract awarded to Brown. [1], p. 2. A payment bond is a "bond given by a surety to cover any amounts that, because of the general contractor's default, are not paid to a subcontractor or materials supplier." *Payment bond*, BLACK'S LAW DICTIONARY (11th ed 2019).

## I. FACTS

Brown is a Louisiana limited liability company that contracted with the Louisiana Department of Transportation and Development to work on the I-10 New Orleans East Drain Canal Bridge Project.[2] [1], pps. 1, 3. "As required by Louisiana law, Brown [ ] provided a payment bond issued by [US] Fire [ ] . . . guaranteeing payment of, among other things, the [b]arriers that were designed, manufactured, and stored in Mississippi." *Id.* at 4. US Fire is an insurance company organized pursuant to the laws of the State of Delaware with its principal place of business in Morristown, New Jersey. It is authorized to do business in the State of Mississippi through the Mississippi Insurance Commissioner. *Id.* at 2.

Brown requested that Design, a Mississippi corporation with its principal place of business in Gulfport, Mississippi, submit a quote to design, manufacture, and deliver concrete median barriers for the project. [1], p. 1; [11-1], p. 2. Design submitted a proposed purchase order to Brown on June 5, 2020, in the amount of $1,406,979.75 for concrete median barriers. [7-1], p. 4. Brown and Design ultimately agreed that Design would provide the concrete median barriers for $736,694.53. *Id.* at 8. The contract included a forum-selection clause stating: "Supplier agrees that the proper and only venue that any dispute regarding this Purchase may be heard is in the State or Federal District[ ] Courts within the State of Louisiana." *Id.* at 15.

Pursuant to the contract, Design provided the concrete median barriers to Brown at the project site in Orleans Parish, Louisiana. [12], pps. 1, 3. Design claims "Brown [ ] has failed to pay [Design] in full for the barriers. Instead, Brown [argues] that it is entitled to certain setoffs[ ]" from

---

[2] Brown Industries, LLC, is a Louisiana limited liability company that is Brown Industrial Construction's manager and sole member. [7-1], p. 1. The members of Brown Industries are Scott Brown and Joshua Fuller. *Id.* Neither are domiciled in Mississippi. *Id.*

what Design is owed. *Id.* at 1. Also, Design alleges that US Fire has "failed to honor payment bond claims made by Design." [12], p. 4.

## II. ANALYSIS

Brown and US Fire argue that there is no personal jurisdiction because they lack the minimum contacts in this forum.[3] [7]. Brown and US Fire also argue that venue is improper, and Design's claims must be dismissed or transferred because a substantial part of the acts or omissions giving rise to Design's claims did not occur in this judicial district. [8], p. 11. Additionally, the contract has a forum-selection clause that specifically requires venue "in the State or Federal District[ ] Courts within the State of Louisiana." [7-1], p. 15; [8], p. 11. Design alleges that both jurisdiction and venue are proper in this Court because "nearly all of [Design's] work [was] performed in Mississippi" and "substantial events giving rise to [Design's] claims arose in Mississippi." [11], p. 2; [12], 4. Also, Design contends that, despite the forum-selection clause, "the public and private interest factors relied upon by [Brown and US Fire] do not support transfer to the Eastern District of Louisiana." [12], pps. 4-5.

Jurisdiction is analyzed on a claim-by-claim basis. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006). But the Court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts. *See Seiferth*, 472 F.3d at 275. Since the claim against US Fire does not arise out of the same forum contacts as Brown, the Court will analyze personal jurisdiction as to Brown and US Fire separately. *Id.*

## A. Personal Jurisdiction – Brown

A court can "assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted

---

[3] Brown and US Fire are represented by the same counsel.

by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). "Plaintiffs bear the burden of proving the district court's personal jurisdiction, but relevant factual disputes will be resolved in plaintiffs' favor." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)). "[T]he district court may consider the contents of the record at the time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002).

### i. Mississippi Long-Arm Statute

This Court first looks to the Mississippi long-arm statute which provides:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS. CODE ANN. § 13-3-57. There are three prongs to the Mississippi long-arm statute: contract, tort, and "doing-business." *Fitch v. Wine Express Inc.*, 297 So. 3d 224, 228 (Miss. 2020); MISS. CODE ANN. § 13-3-57. Design, a Mississippi resident, only asserts this Court has jurisdiction over Brown, a resident of Louisiana, under the contract prong. [1], pps. 1-2. For Design to establish personal jurisdiction then, it must establish that Brown entered into a contract "with a resident of this state to be performed in whole or in part by any party in this state." MISS. CODE ANN. § 13-3-57; *Sorrells v. R & R Custom Coach Works, Inc.*, 636 So. 2d 668, 671 (Miss. 1994).

Brown says the contract requires performance in Louisiana. [8], p. 9. Upon review of the contract, it specifies that "the goods and services will be provided and performed by [Design]." [7-1], p. 8. The "goods and services" are the barriers, and it is undisputed that the contract required Design to manufacture the barriers "at Brown['s] requests under certain detailed specifications[.]" [12], p. 1. Design fabricated the barriers in Mississippi pursuant to the contract. *See Global Mfg. & Eng'g, Inc. v. Duo-Dent Dental Implant Sys., LLC*, No. 1:04-cv-761-LG, 2005 WL 8170131 (S.D. Miss. Jul. 19, 2005) (finding the long-arm statute applied because the contract required Global to produce implants in Mississippi); *Genesis Press, Inc. v. Carol Pub. Group, Inc.*, No. 1:99-cv-311-B, 2000 WL 33907680 (N.D. Miss. Mar. 30, 2000) (concluding the long-arm statute applied because the contract required the plaintiff to send books from Mississippi); *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 651 F. Supp. 623, 626 (S.D. Miss. 1986) (holding the long-arm statute applied because the contract to fabricate steel for a construction project in Florida required fabrication at plaintiff's Mississippi facility). Therefore, Brown falls under the broad reach of the Mississippi long-arm statute.

Accordingly, the Court must now determine if exercising personal jurisdiction over Brown is consistent with the Due Process Clause of the Fourteenth Amendment. *See Allred*, 117 F.3d at 281.

### ii. Due Process

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014) (citing *World-Wide Volkswagen Corp v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 580, 62 L. Ed. 2d 490 (1980)). The Fifth Circuit has held that jurisdiction can be

exercised when: (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)).

First, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). "The 'purposeful availment' requirement protects defendants from being summoned to a forum where they have only 'random, fortuitous, or attenuated contacts.'" *Sayers Const. L.L.C. v. Timberline Const., Inc.*, 976 F.3d 570, 573–74 (5th Cir. 2020) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). "The 'minimum contacts' aspect of the analysis can be established through 'contacts that give rise to specific personal jurisdiction or those that give rise to general personal jurisdiction.'" *Mink*, 190 F.3d at 336.

"Where a defendant has 'continuous and systematic general business contacts' with the forum state, . . . the court may exercise 'general' jurisdiction over any action brought against that defendant." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*¸ 466 U.S. 408, 415, 103 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)). But when "contacts are less pervasive, the court may still exercise 'specific jurisdiction' in a suit arising out of or related to the defendant's contacts with the forum." *Id.* Ultimately, the defendant's conduct must be so connected with the forum State "such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting

*World-Wide Volkswagen*, 444 U.S. at 295).

Design only argues the Court has specific personal jurisdiction over Brown, so the Court need not conduct a general jurisdiction analysis. [12], p. 10. "Where the plaintiff alleges specific jurisdiction, as here, due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Intern., Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012) (citing *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)). In other words, specific jurisdiction exists when the "nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." *Mink*, 190 F.3d at 336.

In conducting this analysis, the Court "focuses on 'actions by the defendant . . . that create a substantial connection with the forum State." *Sayers Const.*, 976 F.3d at 573 (citing *Burger King*, 471 U.S. at 481–82). Notably, courts focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285. The defendant's "relationship must arise out of the contacts that the 'defendant *himself*' creates with the forum State.'" *Id.* at 284 (quoting *Burger King*, 471 U.S. at 475) (emphasis in original). Design alleges that the majority of its "services under the order occurred in Mississippi, where the materials were designed, manufactured, and stored at Brown['s] request." [12], p. 11. Design claims that "Brown [ ] expected these services to be performed in Mississippi." *Id.*

The United States Supreme Court has held: "an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum[.]" *Burger King*, 471 U.S. at 478 (emphasis in original). "In breach-of-contract disputes, the

7

[minimum contacts] analysis turns on a 'highly realistic' assessment of the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Sayers Const.*, 976 F.3d at 573 (citing *Burger King*, 471 U.S. at 479). "A touchstone of this analysis is the 'place of contractual performance.'" *Id.* (quoting *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992)). Here, the place of Brown's contractual performance is in Louisiana—not Mississippi—since delivery was in Louisiana. [7-1], p. 8.

Despite this, Design alleges the following five facts are nonetheless sufficient to establish specific personal jurisdiction over Brown in Mississippi:

> (1) Brown [ ] reached out to request the Quote from [Design] in Mississippi; (2) [Design] designed and manufactured the [b]arriers in Mississippi; (3) Brown [ ] sent employees to [Design's] Gulfport, Mississippi facility numerous times to monitor and inspect the [b]arriers; (4) at Brown['s] request, [Design] stored the [b]arriers in Mississippi for three months; and (5) [Design] utilized its own delivery trucks, housed in Mississippi, to deliver part of Brown['s] order to the Project.

[12], p. 4. The Court will look to the five facts pled by Design to determine if Brown has the necessary minimum contacts to establish specific personal jurisdiction.

First, Design alleges that Brown "reached out" to request a bid for the project. [12], p. 4. But solicitation of business does not constitute purposeful availment. *See Sayers Const.*, 976 F.3d at 573–74. "[A]ny solicitation by [Defendant] is equally irrelevant because it establishes, at most, a relationship between [Defendant] and [Plaintiff]—not [Defendant] and [the forum state]." *Sayers Const.*, 976 F.3d at 573–74 (citing *Walden*, 571 U.S. at 285–86). The Fifth Circuit has "repeatedly held" that "engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of

specific personal jurisdiction." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (citing *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)). Despite Design's argument, the first fact does not constitute purposeful availment.

Design next claims that designing and manufacturing the barriers in Mississippi is sufficient to establish specific personal jurisdiction because the "majority of the work on this order took place in Mississippi by nature of [Design's] manufacturing activities." [12], p. 14. Further, Design contends "it is clear that the parties *expected* [Design] to perform its manufacture of the [b]arriers in Mississippi." [12], p. 8.

While that may be true, the focus of the minimum contacts analysis is only on the "relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (citations omitted). Indeed, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (citing *Hall*, 466 U.S. at 417). Here, Brown had no obligation to perform any part of the contract in Mississippi. "[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Hall*, 466 U.S. at 417. Therefore, this does not constitute purposeful availment.

Next, Design asserts Brown's visits to Design's facility in Gulfport, Mississippi "to monitor the manufacture, storage, and loading of the [b]arriers" is sufficient to establish specific personal jurisdiction. [12], p. 8. But the Fifth Circuit says otherwise. In *Hydrokinetics*, the Fifth Circuit held a nonresident contractor lacked the necessary minimum contacts with Texas to assert personal jurisdiction. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir.

1983). The Fifth Circuit found that the nonresident contractor's multiple visits to Texas "to inspect [the plaintiff's] facilities . . . [was] relevant, but" did "not find it sufficient to alter the basic quality and nature of [the nonresident contractor's] contact with the state of Texas." *Hydrokinetics*, 700 F.2d at 1029. There, "the significance of [the location the agreement between the parties was entered] diminished by the provision specifying that the agreement be governed and construed according to the laws of the state of Alaska." *Id.* "Although [the nonresident contractor] did agree to purchase goods which it knew were to be manufactured by [the plaintiff] in Texas, no performance by [the nonresident contractor] was to take place in Texas, other than perhaps the payment for the goods." *Id.* "The only performance in Texas was that of the plaintiff, with delivery by [plaintiff] taking place in the state of Washington." *Id.* Therefore, the Fifth Circuit held that the visits to Texas were insufficient to establish the minimum contacts necessary to assert specific personal jurisdiction over the nonresident contractor in Texas. *Id.* at 1031.

The contract between Design and Brown did not require inspections or for Brown to perform any obligation in Mississippi. *See* [7-1]. But the contract did require Design to supply and deliver the barriers to Louisiana. *Id.* Additionally, a choice-of-law provision specifies the law of Louisiana will apply to the contract. *Id.* at 15. To exercise personal jurisdiction, the defendant's "relationship must arise out of the contacts that the 'defendant *himself*' creates with the forum State.'" *Walden*, 571 U.S. at 284 (citations omitted). "[H]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* at 285 (citing *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S. Ct. 571, 62 L. Ed. 2d 516 (1980)).

Design cites *Sorrels Steel* to support its argument that Brown's employees that

"monitor[ed] the manufacture, storage, and loading of the [b]arriers" is sufficient to establish specific personal jurisdiction. [12], p. 13; *Sorrels Steel Co., Inc. v. Great Southwest Corp.*, 651 F. Supp. 623, 625–28 (S.D. Miss. 1986). But this case is distinguishable. In that district court opinion, a Mississippi manufacturer sued a nonresident contractor and surety in connection with a Florida construction project. *Sorrels Steel*, 651 F. Supp. at 625. The court denied the nonresident contractor's motion to dismiss because the contract required the defendant to "provide contract drawings and shop testing" both "actions to be performed in Mississippi." *Id.* at 627. The court concluded that these "certain elements of the contract and subsequent agreements were to be performed by the defendant in Mississippi." *Id.*

The facts of this case are sufficiently different. Indeed, Brown's visits to Mississippi, like those in *Hydrokinetics*, are insufficient to "alter the basic quality and nature" of Brown's contact with the state of Mississippi because no similar requirements, such as providing contract drawings or shop testing, were contemplated between Design and Brown. *Hydrokinetics, Inc.*, 700 F.2d at 1029. The third fact does not constitute purposeful availment. *See Hydrokinetics*, 700 F.2d at 1029; *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (concluding the visit of an executive to Texas did not constitute minimum contacts); *Roxco, Ltd. v. Harris Specialty Chems., Inc.*, 133 F. Supp. 2d 911, 916 (S.D. Miss. 2000) (finding when out-of-state employees occasionally visited Mississippi to view the application of the defendants' products, such transient visits were not sufficient to establish jurisdiction).

This leaves facts four and five: "(4) at Brown['s] request, [Design] stored the [b]arriers in Mississippi for three months; and (5) [Design] utilized its own delivery trucks, housed in Mississippi, to deliver part of Brown['s] order to the Project." [12], p. 4. The Court "focuses on

'actions by the defendant . . . that create a substantial connection with the forum State.'" *Sayers Const.*, 976 F.3d at 573 (citing *Burger King*, 471 U.S. at 481–82). These activities by Design in Mississippi do not constitute minimum contacts when Brown did not perform any of its obligations in Mississippi, the contract did not require performance by Brown in Mississippi, and the contract required delivery in Louisiana—outside of Mississippi. *See Moncrief Oil Intern. Inc.*, 481 F.3d at 312 (holding the unilateral activities of the plaintiff in Texas did not constitute minimum contacts) (citing *Hydrokinetics, Inc.*, 700 F.2d at 1029). Further, "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment." *Moncrief Oil Intern. Inc.*, 481 F.3d at 312. Brown's "request" that Design store the barriers was a communication in furtherance of carrying out the contract. The only performance required in Mississippi was that of Design. *See Trois v. Apple Tree Auction Center, Inc.*, 882 F.3d 485, 489 (5th Cir. 2018) (finding the claim was based on a contract executed and performed in Ohio and that any partial performance by Trois in Texas is insufficient to establish jurisdiction). Brown's "purported contacts with Mississippi arose out of its dealings with [Design], which happens to reside in Mississippi, rather than [Brown] actually directing its activities at the State of Mississippi itself." *Trustmark Nat. Bank v. Sevier Cnty. Bank*, No. 3:13-cv-527-HSO, 2014 WL 4816154, at *5 (S.D. Miss. Sep. 24, 2014) (finding the court lacked the minimum contacts necessary to assert jurisdiction over the defendant). Consequently, the fourth and fifth facts do not constitute purposeful availment. Accordingly, Design has failed to allege the minimum contacts necessary for this Court to assert specific personal jurisdiction over Brown. *See Sayers Const.*, 976 F.3d at 573 (citations omitted); *Hydrokinetics*, 700 F.2d at 1029.

Since Design has failed to allege the minimum contacts for this Court to assert specific personal jurisdiction over Brown, asserting jurisdiction would be improper. Therefore, this Court need not reach the question of whether jurisdiction is fair and reasonable. *See McFadin*, 587 F.3d at 761.

## B. Personal Jurisdiction – US Fire

US Fire states that it is not subject to the jurisdiction of this Court because "under Louisiana law a 'surety may assert against the creditor any defense to the principal obligation that the principal obligor could assert except lack of capacity or discharge in bankruptcy of the principal obligor." [8], p. 1 n. 1; *See* LA. CIV. CODE ANN. Art. 3046. US Fire claims that "a surety stands in the shoes of the principal obligor." [8], p. 1 n. 1. US Fire asserts that its arguments in support of dismissing or transferring this case "as to [Brown], the principal obligor, [are] equally applicable to [US Fire]." [8], p. 1 n. 1.[4] Although US Fire joins the motion in the entirety, it is well settled that "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). "[I]n general, federal courts can exert power only over out-of-State defendants that are 'subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Sayers Const.*, 976 F.3d at 573; FED. R. CIV. P. 4(k)(1)(A). Accordingly, the Court must determine if US Fire is amenable to jurisdiction under the Mississippi long-arm statute. *See* MISS. CODE ANN. § 13-3-57.

---

[4] US Fire cites no authority to support its contention that a general state surety statute that allows a surety to assert "any defense to the principal obligation that the principal obligor could assert" overcomes constitutionally mandated jurisdictional requirements.

### i. Mississippi Long-Arm Statute

US Fire is registered to do business in Mississippi through the Commissioner of Insurance of the State of Mississippi. [1], p. 2; [11-5], p. 1. US Fire does business in Mississippi and has designated a registered agent in Mississippi. [11-5], p. 1. While the bond was issued in Louisiana, it exists to guarantee payments for all materials, equipment, and labor as well as that all requirements have been completed. [1-1], p. 3. This dispute arises out of US Fire's alleged failure to honor payment bond claims. [1], p. 6. Design alleges jurisdiction is appropriate under the "doing business" prong of the Mississippi long-arm statute. [12], pps. 13-14. Since US Fire is registered to do business with the Commissioner of Insurance, this Court has personal jurisdiction over US Fire under Mississippi's long-arm statute. *See Sorrels Steel Co.*, 651 F. Supp. at 628; [1], p. 2.

### ii. Due Process

The Court must also determine whether subjecting US Fire to personal jurisdiction in Mississippi is constitutionally permissible under the Due Process Clause of the Fourteenth Amendment. *See Allred*, 117 F.3d at 281. For jurisdiction to be proper, the Court must find that US Fire has (1) purposefully established "minimum contacts" with Mississippi and that (2) "the exercise of jurisdiction over [US Fire] does not offend 'traditional notions of fair play and substantial justice.'" *Mink*, 190 F.3d at 336.

Design claims that just as in *Sorrels Steel* the Court has general personal jurisdiction over US Fire, so the Court need not conduct a specific jurisdiction analysis. [12], pps. 13-14. A court has general jurisdiction when "a defendant has 'continuous and systematic general business contacts' with the forum state." *Luv N' care*, 438 F.3d at 469 (quoting *Helicopteros*, 466 U.S. at 415). Design alleges that "[w]hile the Bond was issued in Louisiana, it exists for the protection of material

suppliers, like [Design], who [was] damaged in Mississippi as a result of Defendants' refusal to pay." [12], p. 14. Design claims that "Defendants' contact with Mississippi was certainly not [a] mere fortuity based only upon [Design's] residence." *Id.*

Design alleges the necessary minimum contacts are present to assert general jurisdiction because US Fire is registered to do business in Mississippi. [12], p. 14. US Fire has purposefully availed itself of the benefits of the State of Mississippi by registering with the Commissioner of Insurance. *See Wilmington Trust, N.A. v. Lincoln Benefit Life Co.*, 328 F. Supp. 3d 586, 590 (N.D. Miss. 2018) (holding nonresident insurer purposely availed itself of the benefits of transacting insurance in Mississippi by registering with the Commissioner of Insurance); *Joshua Properties, LLC v. D1 Sports Holdings, LLC*, 130 So. 3d 1089, 1095 (Miss. 2014). Therefore, the Court must determine if the assertion of jurisdiction would offend traditional notions of fair play and substantial justice. *See Mink*, 190 F.3d at 336.

In the Due Process analysis, the burden shifts to the defendant to demonstrate that the assertion of jurisdiction is unfair. *Id.* at 759-60. "[T]he defendant must make a 'compelling case' against" the exercise of personal jurisdiction. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Burger King*, 471 U.S. at 477). In assessing whether jurisdiction comports with fair play and substantial justice:

> Courts balance (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies.

*In re Chinese-Manufactured Drywall Prods. Liability Litgation*, 753 F.3d 521, 544 (5th Cir. 2014) (citing *Burger King*, 471 U.S. at 467-77).

First, the Court must consider the burden upon the nonresident to litigate in Mississippi.

*See Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 615 (5th Cir. 2008). Here, the burden on US Fire would be nominal. *See Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 400-01 (5th Cir. 2003 (finding 121 miles is not too burdensome on the defendant). It is not far between Gulfport, Mississippi, and the proposed venue—New Orleans, Louisiana—therefore this consideration weighs in favor of retaining jurisdiction.[5]

Second, the Court must consider the interests of the forum state, Mississippi, in subjecting US Fire to personal jurisdiction. *See Johnston*, 523 F.3d at 615. US Fire argues that "Mississippi does not have a great interest in adjudicating this matter . . . [because] any alleged wrongful activity occurred on a public works project in another state." [8], p. 10. Although Design alleges that "Mississippi has an interest in adjudicating [Design's] claims for Barriers manufactured, stored, and delivered from Mississippi[,]" Louisiana undoubtedly has a great interest in resolving a contract dispute that arises out of a public works project located in Louisiana. *See* [1], p. 3; [12], p. 15. But Mississippi also has an interest in providing a forum for this action because the injured party, Design, is a Mississippi resident. *See Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001) (holding the retention of jurisdiction did not offend the traditional notions of fair play and substantial justice when the injured party was a resident of the forum state) (citing *Holt Oil*, 801 F.2d 779-80). This consideration leans slightly in favor of retaining jurisdiction.

Third, the Court must consider Design's interest in obtaining the most efficient and convenient relief. *See Johnston*, 523 F.3d at 615. Design alleges that "key witnesses and evidence related to this matter [is] located in Gulfport, Mississippi." [12], p. 15. Despite US Fire's argument

---

[5] The distance between Gulfport, Mississippi and New Orleans, Louisiana is 80 miles. [12], p. 19. Brown and US Fire request the Court transfer this case to the Eastern District of Louisiana. [7], p. 1. Design opposes transfer but does not dispute that the Eastern District of Louisiana is the proper venue within Louisiana. [12], p. 19.

that Design's "interest in adjudicating this matter here is nominal and is limited to its residency[,]" once "minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." [8], p. 10; *Wien Air*, 195 F.3d at 215 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)).

Under the fourth consideration, the Court must consider the judicial system's interest in efficient resolution of the controversy. *See Johnston*, 523 F.3d at 615. The Court finds that the fourth consideration is neutral in this case; the courts in either Mississippi or Louisiana could adjudicate this case with equal efficiency. Finally, fifth, the Court must consider the states' shared interest in furthering substantive social policies. *See Johnston*, 523 F.3d at 615. Neither party put forward arguments on this point, so the fifth consideration does not tip the balance either way in this instance.

Based on all five considerations, the Court finds that its exercise of personal jurisdiction over US Fire would not offend traditional notions of fair play and substantial justice. Although this Court has jurisdiction over US Fire, the Court may still transfer this case according to 28 U.S.C. § 1404 for the convenience of the parties and witnesses and the interest of justice. Therefore, the Court will determine whether transfer is in the interest of justice.

## C. Venue

Brown and US Fire assert the Court should transfer this case because it is in the interest of justice due to the forum-selection clause between Brown and Design.[6] [8], p. 11; [14], p. 8. Section

---

[6] Although US Fire is not a party to the contract between Brown and Design, US Fire is a "transaction participant" as a non-signatory. *See Titan Indemnity Co. v. Hood*, 895 So. 2d 138, 148 (Miss. 2004) (holding a forum-selection clause may be applied to transaction participants because "[t]o conclude otherwise would enable a party to bypass a valid forum selection clause by naming in its petition a closely-related party who was not a party to the contract.").

1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26–27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960)). Transfer of venue pursuant to 28 U.S.C. § 1404(a) is at the discretion of the court, considering: "[a]ll relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3847 at 370 (1986)).

In applying Section 1404(a), a district court must determine, "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *In re Horseshoe Entm't*, 337 F.3d 429, 432 (5th Cir. 2003), *cert. denied*, 540 U.S. 1049 (2003)). As this action is founded solely on diversity of citizenship, it may be brought in:

> (1) A judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). "Usually, a court applying [the doctrine of forum non conveniens or Section 1404(a)] must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private- and public-interest factors

and giving deference to the plaintiff's choice of forum." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794–95 (5th Cir. 2007). The private-interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981). The public-interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

But the "presence of a valid forum-selection clause simplifies this analysis in two ways." *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 300 (5th Cir. 2016) (citing *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W.D. Tex.*, 571 U.S. 49, 62-65, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013)). "'First, [Plaintiff's] choice of forum merits no weight' because, by contracting for a specific forum, '[Plaintiff] has effectively exercised its venue privilege before a dispute arises.'" *Id.* "Second, the private-interest factors 'weigh entirely in favor of the preselected forum,' so that the 'district court may consider arguments about public-interest factors only.'" *Id.* "Forum-selection clauses are presumptively valid: '[A] freely negotiated private [ ] agreement, unaffected by fraud, undue influence, or overweening bargaining power . . . should be given full effect.'" *Afram Carriers, Inc. v. Moeykens*, 145 F.3d 298, 301 (5th Cir. 1998) (quoting *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–13, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)).

Consequently, when a party invokes a forum-selection clause, the Court should first consider "whether the forum selection clause is mandatory or permissive." *PCL Civ. Constr. Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020). A mandatory forum-selection clause "affirmatively requires that litigation arising from the contract be carried out in a given forum" by "clear language specifying that litigation must occur in the specified forum," whereas a permissive clause "is only a contractual waiver of personal-jurisdiction and venue objections if litigation is commenced in the specified forum." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).

The forum-selection clause in the contract states: "[Design] agrees that the proper and only venue that any dispute regarding this Purchase may be heard is in the State or Federal District[ ] Courts within the State of Louisiana." [7-1], p. 15. Courts have held forum-selection clauses mandatory when express language such as "only" is incorporated into the clause to grant exclusive jurisdiction or venue on a specific court. *See Bentley v. Mutual Benefits Corp.*, 237 F. Supp. 2d 699, 701, n. 5 (S.D. Miss. 2002) (citing *M/S Bremen*, 407 U.S. at 3). Here, the parties used express language limiting their ability to bring "any dispute regarding this Purchase" to "the State or Federal District[ ] Courts within the State of Louisiana." [7-1], p. 15. Therefore, the language in the forum-selection clause is clearly mandatory.

"In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Atl. Marine Const. Co.*, 571 U.S. at 66. As there is a valid and enforceable mandatory forum-selection clause, "[Design is] acting in violation of the forum-selection clause, [and] must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 67. "Because public-interest factors will rarely defeat a transfer motion, the

practical result is that forum-selection clauses should control except in unusual cases. Although it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause,'" those cases will not be common. *Id.* at 64 (citing *Stewart Org., Inc. v. Ricoh*, 487 U.S. 22, 30–31, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988)). This is not one of those cases. *See In re Rolls Royce Corp.*, 775 F.3d 671 (5th Cir. 2014) (transferring case where no "exceptional circumstances" were present).

> The public-interest factors include:
>
> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG*, 371 F.3d at 203 (citations omitted). Design only argues two public-interest reasons why this case should not be transferred to the United States District Court of the Eastern District of Louisiana. [12], pps. 20-21. First, Design argues "Mississippi has an extremely close factual connection with [Design's] cause of action." [12], p. 20. Second, Design argues the "application of Louisiana law alone does not tilt the public interest factors in favor of transfer." *Id.* at 21.

Design relies on its own acts in Mississippi to argue that there is significant local interest in having this dispute decided in Mississippi. *See* [12], p. 20. But Design's claim is based off a contract entered into in Louisiana and a claim to recover from a payment bond issued in Louisiana. [1], p. 1. Louisiana has a very strong interest in this litigation. Since the project, which is described as a "public infrastructure project" is based in Louisiana, the payment bond was issued in Louisiana, Brown is a resident of Louisiana, and any payment will be paid from Brown with funds originating from Louisiana, then Louisiana undoubtedly has a great interest in this dispute.

The Court finds that the circumstances alleged by Design do not rise to the level of "most unusual" or "extraordinary" to deny a Section 1404(a) transfer. *See Atl. Marine Constr. Co.*, 571 U.S. at 62–66. Design has failed to meet its heavy burden of demonstrating that this is an unusual and uncommon case in which the public-interest factors overwhelmingly disfavor a transfer in the face of a forum-selection clause. *See Quality Custom Rail & Metal, LLC v. Travelers Cas. & Sur. Co. of Am.*, 2014 WL 840046, at *3 (N.D. Tex. Mar. 4, 2014) (holding that non-signatory to a surety bond was bound by a forum selection clause and transfer was proper) (citing *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 520 (5th Cir. 2006) (finding that a non-signatory was bound to forum-selection clause)). Consequently, the Court holds that the forum-selection clause requires a transfer of this case, under 28 U.S.C. § 1404(a), to the United States District Court for the Eastern District of Louisiana.

## III. CONCLUSION

Accordingly, the Court denies Brown and US Fire's Motion [7] to Dismiss for lack of personal jurisdiction or improper venue and grants the alternative motion under § 1404(a) to transfer to the Eastern District of Louisiana. The Clerk of Court shall transfer according to the usual procedure.

IT IS THEREFORE, ORDERED AND ADJUDGED that Defendants, Brown Industrial Construction and United States Fire Insurance Company, Motion to Dismiss for lack of personal jurisdiction and/or improper venue is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Defendants, Brown Industrial Construction and United States Fire Insurance Company, Motion to Transfer pursuant to 28 U.S.C. § 1404(a) is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that this case is TRANSFERRED to the United States District Court for the Eastern District of Louisiana.

SO ORDERED AND ADJUDGED this the 31st day of March, 2023.

_____

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE